IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-CV-300

| | |
|---|---|
| JAMES V. PARKER, JR., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   **ORDER** |
| | ) |
| PNC BANK, NATIONAL ASSOCIATION, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim, filed September 17, 2013 (Doc. No. 7) and Defendant's Memorandum in Support (Doc. No. 7-1). Plaintiff has not filed a response, and the allotted time in which to do so has passed. For the reasons set forth below, Defendant's Motion is **GRANTED**.

**I. BACKGROUND**

Plaintiff James V. Parker filed this Complaint in North Carolina Superior Court, Clay County, on April 19, 2013 (Doc. No. 1, Ex. A). On May 17, 2013, Defendant PNC Bank, N.A. removed the case to the Western District of North Carolina (Doc. No. 1). On May 24, 2013, Defendant filed its Answer and Counterclaim against Plaintiff (Doc. No. 3), and on June 10, 2013, Plaintiff filed an Answer to the Counterclaim (Doc. No. 4). Defendant now brings this Motion, asking the Court to dismiss all the claims against it for failure to state a claim.

The allegations in Plaintiff's Complaint stem from a purported oral agreement between the two parties that Defendant would refinance Plaintiff's mortgage at a reduced interest rate. (Compl. ¶ 7). The agreement was dependent upon (1) Plaintiff's creditworthiness and (2) the home appraising for an amount greater than or equal to the amount outstanding under the

1

mortgage. (Compl. ¶ 8). Defendant notes that the amount outstanding at that time was "approximately $270,000," (Mem. at 2), and does not dispute his creditworthiness, (Def.'s Ans. ¶ 9). Plaintiff further alleges that, under the terms of the agreement, the Defendant secured an appraiser and that Plaintiff paid $350 for the appraisal. (Compl. ¶¶ 10-11). The appraiser determined that the home was worth $210,000, which meant that Plaintiff did not qualify for the refinancing. (*See* Compl. ¶¶ 16, 19). Plaintiff believes that his home is actually worth $270,000 and that the appraiser "failed to exercise due circumspect," when generating his valuation. (Compl. ¶ 14). Thus, he reasons, "the Defendant breached its duty to this Plaintiff by failing to employ an appraiser who was competent to appraise the Plaintiff's property." (Compl. ¶ 17). In its Memorandum, the Defendant notes that it is the current holder of a commercial note executed by Plaintiff on August 31, 2006 in the original principal amount of $271,800. (Mem. at 2). Collectively, the Complaint alleges causes of action for (1) Negligence; (2) Breach of Contract; (3) Specific Performance; (4) Trespass to Chattels; and (5) Unfair and Deceptive Trade Practices.

## II. STANDARD OF REVIEW

When faced with a Rule 12(b)(6) motion to dismiss, courts are instructed to "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). After "assum[ing] the veracity" of these factual allegations, the court is to "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a "complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, the court "need not

accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

### III. DISCUSSION

#### A. Negligence

Plaintiff asserts a claim of negligence against Defendant based on its "duty to provide an appraiser who would perform his appraisal in a workmanlike manner" and its negligent failure to do so. (*See* Compl. ¶¶ 12, 15). In support, he maintains that the appraiser was an agent of Defendant, (Compl. ¶ 16), and that the appraiser "should have used 'comparable homes' to make a fair determination of the value of the Plaintiff's home" and did not, (Compl. ¶ 13). In response, Defendant argues that (1) it owed no duty to Plaintiff in connection with the appraisal; (2) the appraiser was not an agent of Defendant; and (3) that Plaintiff's negligence claim is otherwise barred by the economic loss rule.

North Carolina courts have held on more than one occasion that an appraisal is for the benefit of the lender, not the borrower. *See, e.g.*, *Camp v. Leonard*, 133 N.C. App. 554, 559 (1999) ("Unless a further obligation is assumed by the lender, its inspection of the premises to be mortgaged is made only to determine whether the property has sufficient value to secure the loan, and is for the benefit of the lender only."); *Allran v. Branch Banking & Trust Corp.*, 2011 NCBC 21, at ¶ 42 (2013) ("Appraisals are not conducted for the benefit of borrowers, but instead to protect banks from making under-secured loans."). Such is the case here. Plaintiff alleges that Defendant required an appraisal of the property before agreeing to refinance his mortgage. (*See* Compl. ¶ 8). It follows that the appraisal was meant to help the Bank determine whether it would, in fact,

refinance Plaintiff's mortgage, placing it squarely in line with North Carolina cases on the subject. Plaintiff offers no distinct reason *why* Defendant had a duty to him with respect to the appraisal; thus, Plaintiff has failed to adequately allege a duty on the part of Defendant.

Nor does it appear that the appraiser was actually the agent of Defendant such that any negligence on the part of the appraiser could be attributed to Defendant. North Carolina courts require that, in order for an agency relationship to exist, the principle have some degree of control over the conduct of the agent. *See, e.g.*, *Hospira, Inc. v. AlphaGary Corp.*, 194 N.C. App. 695, 701 (2009). Defendant argues that this is not the case here because, among other things, appraisers are required by law to work independently of any control from the Bank. *See* 15 U.S.C. § 1639e. Further, courts that have considered the issue have held that there is no cause of action for negligent appraisal against one who procures the appraisal. *See generally Suntrust Mortg., Inc. v. Busby*, 651 F. Supp. 2d 479 (W.D.N.C. 2009) ("[T]he [court] cannot find that North Carolina would recognize a cause of action for negligent appraisal against any party other than the appraiser.").

Plaintiff has failed to allege any distinct reason why an agency relationship existed between the Bank and the appraiser, or any other reason why Defendant should be liable for any negligence on the part of the appraiser. Indeed, the Complaint indicates that the appraiser was a third party who was procured by Defendant and paid for by Plaintiff. (*See* Compl. ¶¶ 10-11). Thus, the Complaint fails to state a claim for negligence.

## B. Breach of Contract & Specific Performance

Plaintiff alleges that the parties entered into an oral contract for the refinancing of his mortgage obligations that was conditioned upon certain criteria. (Compl. ¶ 23). He further alleges that Defendant breached the contract by "negligently providing an appraiser who was also negligent in his appraisal." (Compl. ¶ 24). Defendant acknowledges that it "discussed with Plaintiff the possibility of refinancing his existing mortgage to obtain a lower interest rate, subject to credit approval and qualifying property appraisal." (Def.'s Ans. ¶ 7). It does not acknowledge that there was a binding agreement between the parties, but notes that, even if there had been such an agreement, Defendant did not breach it because Plaintiff did not satisfy the conditions precedent to the contract, namely that the property appraise for the required amount. (Mem. at 9). It also notes that the purported contract violates the statute of frauds. (Mem. at 11).

North Carolina has, for many years, allowed parties to place conditions precedent on a contract, such that the agreement does not become binding on the parties until the occurrence of those conditions. *See generally Lerner Shops of N.C., Inc. v. Rosenthal*, 225 N.C. 316 (1945). This is true when the condition precedent involves the determination of a third party. *See High Point Sprinkler Co. v. Dockery Corp.*, 44 N.C. App. 5, 10 (1979) (holding that no contract had been formed because a third party failed to approve the design and installation of a sprinkler system as required by the conditions precedent to the parties' agreement).

Here, the parties' purported agreement was conditioned upon the determination of a third party—namely, that an appraiser value Plaintiff's property at an amount greater than or equal to $270,000. (*See* Compl. ¶ 8). The appraiser did not. (*See* Compl. ¶ 16).

5

Plaintiff contends that this was due to the negligence of the appraiser, the Defendant, or both. (*See* Compl. ¶¶ 13-15). But the Court has already determined that Plaintiff has failed to state a claim for negligence, and that any negligence on the part of the appraiser cannot be attributed to Defendant. *See supra* Part III.A. Under the terms of the purported agreement as alleged by Plaintiff, the Bank was responsible for procuring an appraiser. (*See* Compl. ¶¶ 8, 11). Plaintiff does not allege that Defendant failed to procure an appraiser; only that he disagrees with the determination made by the appraiser. (*See* Compl. ¶ 18). Thus, because it appears from the face of the Complaint that the conditions precedent to the purported contract did not come to pass, Plaintiff has failed to adequately allege the existence of a valid contract.

It also appears that the purported agreement between the parties is barred by the statute of frauds. North Carolina requires that all contracts to sell or convey land must be in writing. *See* N.C. GEN. STAT. § 22-2. This includes mortgages and deeds of trust. *See Daniel Boone Complex, Inc. v. Furst*, 43 N.C. App. 95, 108 (1979). The purported oral contract between the parties is for a mortgage. (*See* Compl. ¶ 23). Thus, it is barred by the statute of frauds. For the foregoing reasons, Plaintiff fails to state a claim for breach of contract.

In order to succeed on a claim for specific performance, Plaintiff must demonstrate the existence of a valid, binding contract. Because the Court has determined that there was no such contract, it has nothing to specifically enforce. Thus, Plaintiff's claim for specific performance fails as well.

**C. Trespass to Chattels**

Plaintiff also asserts a claim for trespass to chattels in that he was required to provide the Bank with copies of tax forms for inspection, presumably in connection with this refinancing request, and that Defendant has failed to return those copies as requested. (Compl. ¶¶ 31-33). Defendants respond that a claim for trespass to chattels depends upon the Plaintiff being deprived of the value of an interest invaded, and that no interest of the Plaintiff's has been invaded because he still has the originals of these forms. (Mem. at 12). Defendant also notes that there can be no trespass where Plaintiff gave Defendant permission to take and hold his personal belongings. (*Id.*)

The Court agrees with Defendant. Plaintiff cannot base a claim for trespass to chattels on the deprivation of copies of forms of which he possesses the originals. Plaintiff voluntarily provided these copies in connection with the possible refinancing of his mortgage. He cannot now claim that he has been unlawfully deprived of some interest in them. Accordingly, the Complaint fails to state a claim for trespass to chattels.

**D. Unfair and Deceptive Trade Practices**

Finally, Plaintiff advances a claim under North Carolina's Unfair and Deceptive Trade Practices Act. In support, he reincorporates his previous allegations and adds that "[u]pon information and belief the Defendant willfully and intentionally encouraged its appraiser to appraise Plaintiff's home lower than fair market value" so that it would not have to refinance his mortgage. (Compl. ¶ 38(c)). Defendant responds that Plaintiff's UDTPA claim is simply an extension of his breach of contract claim, which, without substantial aggravating circumstances, is insufficient to state a claim under the Act. *See, e.g.*, *Oxley v. Asplundh Tree Expert Co.*, No. 1:06-cv-60, 2006 U.S. Dist. LEXIS 42092,

at *9-10 (W.D.N.C. May 16, 2006). In fact, even an intentional breach of contract is typically not enough to maintain a claim under the UDTPA. *See id.*

The Court has already noted that the Complaint fails to state a claim for breach of contract; thus, a UDTPA claim made pursuant to a breach of contract claim cannot also survive. To the extent that Plaintiff alleges that the Defendant encouraged the appraiser to create a fraudulent appraisal, the Court finds that the allegation is an unwarranted inference undeserving of the presumption of veracity. Plaintiff provides no facts to support this conclusion, and such events would seem unlikely given that Defendant was under no obligation to refinance Plaintiff's mortgage in the first place.

## IV. CONCLUSION

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. No. 7) is **GRANTED**. All claims against Defendant PNC Bank are **DISMISSED**.

**SO ORDERED.**

Signed: December 5, 2013

Graham C. Mullen
United States District Judge